Good morning ladies and gentlemen. Our first case for argument this morning is United States v. Robinson. Ms. Masters. Good morning your honors and may it please the court. Rick Masters on behalf of Tonya Robinson. Today I'm going to be addressing the defendant's joint argument on entitlement to acquittal on count 8 for wire fraud and stand on the briefs about her argument regarding correcting the clerical error in her judgment unless the court has any questions. Ms. Robinson's conviction cannot stand because the government did not elicit sufficient evidence to prove the indicted offense that the September 22, 2017 drawdown wire for $80,000 was used to fund payment of fraudulent checks and they can't show that beyond a reasonable doubt. Instead the government pursued theories of conviction contrary to the indictment, the jury instructions which referred back to the indictment, the plain language of the statute 18 U.S.C. 1343 requiring that the wire be used for the purpose of executing a scheme to defraud and this court's controlling precedent in Durham. Here the government's theory in opposing the motion to acquit in theory before the jury was that any wire would do during the course of the scheme because they all went into a central bank account used to fund repairs. And the government told the counsel money is fungible. You think you have to trace dollars through a bank account? It doesn't work. It's not the same bills coming in and going out. So your honor, yes we do think there is some obligation not to completely trace but there is some obligation or a big obligation actually to show beyond a reasonable doubt that this particular drawdown was used for fraudulent expenses and the reason that exists is because we don't criminalize drawdowns that are used for legitimate purposes when an entity continues to use continues to engage in legitimate functions. But really, Ms. Masters, you know, the government has argued that evidence showed that Donley, for instance, had July and August invoices pending for payment at the time of the September 22nd drawdown. Couldn't a jury reasonably find that the funds from the drawdown were used to pay those pending invoices? And given that Donley didn't do any legitimate work, aren't those payments clearly in furtherance of the fraudulent scheme? Your honor, it doesn't meet the sufficiency of the evidence test in this case because, first of all, we dispute that they actually argued that before the jury on count 8. We have what they argued before the jury in our brief. And there are multiple drawdowns that happened before he's actually paid out in November. So the government takes the position they don't have to trace money. They take it in their oral response to the motion to acquit. They take it before the jury. In fact, before the jury they say, we just had to pick one. So anyone that goes into the central account is fine. We then, they make that Donley argument in their written response to the motion to acquit. The court agrees, the district court agrees in Ms. Robinson's open brief. We point out that that money doesn't flow the way the government contends because there's multiple drawdowns. And they drop Donley in the response brief. But when you look at the timing of the invoice, I think Donley is the name of a person, right? And the contracting firm was called Defresh Contractors. Is that right? Yes. Okay. When you look at the timing of this, one of Defresh Contractors' invoices comes in at the end of August, August 31st for like $12,300. And then we fast forward to the drawdown request on September 22nd of 2017. So within a month. And then within about 45 days of that, there's a check going out because HUD had funded the drawdown. Can't a jury find by this indirect and circumstantial evidence that part of that $80,000 was written out to Defresh Contractors? No, for multiple reasons. And chief among them is that the government told the jury didn't have to engage in case money. The government's arguments though aren't the evidence. So when you look at the evidence and you look at the standard of review for overturning a conviction on sufficiency grounds, you have to basically say this is entirely implausible. And I don't see how you can show that. Well, I think when you look at cases like Barta and Asper and it talks about what was argued to the jury, this isn't what was argued to the jury. And so what the government's position… But isn't everything I summarized as a matter of evidence before the jury? But it's not argued that this is what the jury should be looking at. So now the government is saying we didn't tell a jury to be looking at this, but you can draw this reasonable inference from it. And we would suggest that that's not correct because there are legitimate repairs going on and the record shows that there is a paper trail here. There's a paper trail that shows the purposes behind the drawdown and the government just said they didn't have to get into it because HUD had to… the housing authority had to submit… It seems that you're arguing without… although disavowing it expressly, it seems like you're arguing for a tracing rule. We are stating that Durham requires some amount of doing that when there is legitimate functions of a housing authority. Is it your bottom line that the government has to trace a specific dollar to a specific invoice? Is that what you… is that the bottom line for you? No, the bottom line is that on this record, that the evidence before the jury was that there is a paper trail that was submitted to the housing authority, I mean to HUD, because to get a drawdown, the housing authority had to submit to HUD what it wanted to use the funds for. And the government didn't bother to sort of to, as a sufficiency of the evidence matter, show that the funds weren't used to write checks for what the housing authority was seeking them for. And because it's beyond a reasonable doubt, they could have put in the request for the $80,000 for legitimate repairs and written checks the next day for $80,000 for legitimate repairs. And on the beyond a reasonable doubt standard and the sufficiency of the evidence standard, the government is not entitled to this inference, which is what they're saying, that the money went to illegitimate purposes, that the drawdown was for illegitimate reasons. Thank you, counsel. Mr. Capobianco. Good morning, and may it please the Court. Joseph Capobianco on behalf of Howard Smith. I'd like to focus on Mr. Smith's bank fraud convictions, as they are not sustainable as a matter of law. The record is devoid of any evidence that Mr. Smith or his co-conspirators obtained bank property by means of a false statement, which is an essential element. Mr. Capobianco, why is this an issue that we can reach at all, given the absence of a Rule 29 motion directed to bank fraud counts? Your Honor, the Court can reach this under the Plain Error Review. No, the reason I'm asking this question is that the Supreme Court has held that in civil cases, in the absence of a Rule 50 motion, the civil equivalent to the Rule 29 motion, a court of appeals just cannot consider the sufficiency of the evidence. It's not before the appeal. Why shouldn't a Rule 29 motion be required in a criminal case, just like a Rule 50 motion is required in a civil case? Your Honor, we would submit there's differences between the civil and criminal matters, for the obvious reason that the defendant— There are obvious differences, but the question is procedural. Why isn't—I can put it differently. The Plain Error Doctrine requires first that the district court have committed an error. But if the district court was never asked to enter a judgment of acquittal, how can it be an error not to have entered one? Your Honor, this Court has said that its error was the district court on its own motion did not move to— Have we ever tried to reconcile that with the Supreme Court's holding in the civil cases? Your Honor, I'm not familiar with— The answer is no, right? Unitherm's decided—it's now decided 20 years ago. We have been ignoring it in criminal cases ever since, and I wonder whether we're entitled to do that. Your Honor, I would submit that allowing a defendant to be convicted of a crime where there's no evidence on an essential element of an offense, there's a reason that the Court should, on appeal, address that. Allowing a civil defendant to be ordered to pay $500 million without any evidence is also a gross injustice. But if the defendant doesn't make a Rule 50 motion, that's going to happen. Your Honor, I think the injustice— The injustice here, by the way, is—since these are concurrent sentences—it's the $100 special assessment. The injustice in the civil case is a lot bigger. Your Honor, the injustice here is that Mr. Smith has six convictions for bank fraud when he has not committed bank fraud. The sentences of imprisonment are concurrent. If we were to reverse these bank fraud convictions, the result would be that the government would owe your client $600. That's all. Your Honor, in other cases where there have been convictions with concurrent sentences on each count of the conviction, and this Court has reversed one of those, in every single case, the Court remends for resentencing. Not in every single case. So the cases in Chaparro, Davis, Clark— There are cases where that's happened where we thought it mattered, and there are cases where we thought it didn't matter. I'm referring—I don't think you're understanding the nature of my question. The Supreme Court held in United States v. Roy that as a result of the special assessment, the concurrent sentence doctrine no longer precludes appellate review. But I'm asking a question about Steps 3 and 4 of Olano. Your Honor, and this Court has said that Olano's requirements for plain error are met in a sufficiency of evidence challenge when the record is devoid of evidence. When there are concurrent sentences? That's correct, Your Honor. What case is that? Your Honor, I believe Meadows was the case, 91 F. 3rd, 851. And so we would submit that since there's no record evidence here of bank fraud, whatever theories the government has now submitted on appeal that weren't presented to the jury cannot be enough to sustain his conviction. Regarding the bank fraud conviction, does it matter that the use of the bank account was a middle step in the scheme itself, in that the fraudulent drawdown request resulted in funds first being deposited into the housing authority bank account, from which the contractors could then withdraw the funds based on the checks that were issued on those fraudulent invoices? Where the bank account is used at both the front end and the back end of a scheme, does the bank become a pivotal part of the scheme itself? And does that affect the 1344-2 analysis? No, Your Honor, that doesn't affect the analysis. The requirement is that the false statement is the means by which the defendant got the bank property. So whether or not the bank is used up front or at the end or in both places, the requirement is still the same that the false statement has to be the means by which the defendant got the property. And here there's no evidence of that. So whether or not the bank was involved at the beginning and at the end, the government still has not proven that essential element of the crime. Unless the Court has further questions about Mr. Smith's sentence, I'd reserve the rest of the time for rebuttal. Certainly, Counsel. Mr. Temkin. May it please the Court. Good morning, Your Honors. Eli Temkin for the United States. This Court, Your Honor. Mr. Temkin, forgive me for interrupting so quickly, but the time is so short. And I would really appreciate your going into the bank fraud. Because in Lowren, the Supreme Court held that where a valid check is obtained through a swindle, the means requirement of 1344-2 is not met. The Court held that in such a case, the check is perfectly valid. So it is not itself a false or fraudulent means of obtaining bank money. And the false pretense that has led the victim to give a check to the fraudster has nothing to do with the bank that will cash it. Now, doesn't that describe the fraudulent scheme in this case? In other words, how is this case distinguishable from that held insufficient to demonstrate bank fraud in Lowren? Yes, Your Honor. This case is distinguishable from the hypothetical set out in the Lowren case. As an initial point, the Lowren case actually affirmed and upheld the convictions. But Your Honor is referring to the hypothetical where the fraud is completed before the check is written. And that's what distinguishes this case from that hypothetical. To back up a moment, the legal principle at issue here is that anything that misrepresents someone's authority to access funds, essentially an agent's authority to act on behalf of the principal in a transaction, is a representation that can satisfy this by means of requirement. And that's set out in a number of cases that we've cited. For example, the Ayewo case from the First Circuit. So that's the nature of the misrepresentation here. And that gets to the point about Lowren. The representation has to make its way to the bank, though. I mean, that's very clear in Lowren. Yes, Your Honor, absolutely. And so these checks are that misrepresentation or false pretense or fraudulent pretense. They're holding themselves out to be authorized housing authority expenditures. I thought the Supreme Court has held, though, that a check in and of itself doesn't make a representation. The act of depositing a check is not inherently a representation. That's the Williams case. This is different than that. A number of courts have held since Williams. Yeah, I understand where you're going. What I don't understand is can you go back on your response to Judge Rovner's question? Because it's very hard for me to see a distinction between the handbag swindle hypothetical in Lowren and what happened here. I know this case doesn't involve handbags, all that. But on the principle of it, I don't see a distinction. Yes, Your Honor, that gets to the heart of this, as Judge Rovner's question does too. The point here, what distinguishes it here, is that this check was part of the scheme. It was a key part of the scheme. That's how they're accessing housing authority funds. In the Lowren hypothetical, the fraud is done before the check is written. It seems to me that the facts in this case present the type of fraudulent scheme that lacks a relational connection between the false statement and the inducement of the bank to part with its money. The key difference here is that the fraudsters were on both sides of this transaction. Now you're changing the argument. Go back to the point. If I sell you or I want to sell you a knockoff Louis Vuitton handbag, the fact pattern in Lockwood, right? The fraud is not done until I get the check. I'm not going to declare victory in my fraud scheme until you hand me a check. In that situation, it's no different than if you were paid using cash. The fraud is done at that point. If you are the fraudster and you convince me to pay you… You write me a check and then I need to go to the bank and I need to turn the check into cash and I go do it. The Supreme Court has said that doesn't cut it. That's not close enough. Exactly. And that's because the fraud is done when I give you the check. You've tricked me. You've gotten me… What's the distinction though here? Here, Tanya Robinson and Albert Smith were on the other side of this also. They were telling the bank to hand over Housing Authority funds and they were doing that through the check. If the facts were the same except Mr. Smith and Ms. Robinson weren't in on it and no one at the Housing Authority was in on it, then it would be Lowren. Then the fraud is complete once they've tricked the Housing Authority and gotten the Housing Authority. Why are you drawing those distinctions because in the Lowren opinion, the Supreme Court Justice Kagan wrote it. She's not focusing on who is duped as parties to the transaction. What she's focused on is the language that Congress used in 1344 too and whether a misrepresentation ever made its way to the financial institution. You're kind of breaking it down and saying, well, let's look at the culpability of the actors in the hypothetical. That wasn't relevant to her at all or to the court. Respectfully, Your Honor, the Lowren hypothetical does get to when the fraud is complete. And Justice Kagan, in her opinion for the court, talks about this relational requirement and essentially how proximate, how proximately this has to be the means of affecting the scheme, affecting the fraud. But isn't the bank's involvement in the scheme wholly fortuitous? It's a function of the victims paying the fraudster by a valid check rather than cash. Your Honor, this is not a valid check. It looks like a valid check. Everything about it looks like a valid check, which is what makes it a misrepresentation or a false or fraudulent pretense. It's pretending to be something that it's not. It's pretending to be an authorized housing authority payment. And that is the means by which they are accessing the housing authority funds held at the bank. So what you're saying here, the check here is equivalent to a forged or counterfeit check? Or altered or whatever. Or an altered check? Because the Supreme Court in Loughran goes to great lengths to distinguish that in saying the handbag swindle hypothetical does not involve an altered, modified, forged, or counterfeit check. Yes, Your Honor. This is the equivalent of a forged or altered check. The fact pattern presented in Loughran, the court upheld the convictions and the actual facts there involved, at least in some instances, the fraudster… The person swindled in the hypothetical thinks that they bought an authentic Louis Vuitton handbag. The housing authority here, or HUD, you can focus on two victims if you'd like, believe that they have paid for and received value for services. The housing authority doesn't believe that. Tanya Robinson and Albert Smith created this scheme… No, no, no, no, no. They're separate. The corporate entity is not the criminal defendant. The lawsuit is not the United States versus the South Bend Public Housing Authority.  The lawsuit is against people.  So all of a sudden the corporate entity has committed a crime? No, Your Honor. These defendants have committed a crime by accessing the principal's funds without authority. And they've done that through these checks that tell the bank to hand over the principal's funds. And that's set out in cases we've cited, like the Morgenstern case, the Teeman case, the IEA Will case. It's different because of the agency relationship here. They… These were not authorized housing authority payments. They used these checks… They had the ability to use these checks, and they did use these checks to tell the bank, the housing authority is authorizing you to take money from the housing authority's account and transfer it to the payee. And that's false. That's fraudulent. The housing authority did not authorize that expenditure, and it didn't become an authorized housing authority expenditure just because Tanya Robinson said so. The housing authority had a mission, has a mission, which is public housing. The mission is not to line the pockets of executives and contractors for work that never happened. And so by holding themselves out to be authorized housing authority expenses, these checks were fraudulent misrepresentations and pretenses to access the housing authority's funds held at the bank. Beyond that, these checks misrepresented who the payee was. The checks listed the contractors as payees, and these contractors were immediately turning around and funneling a good portion of these funds, usually most of these funds, back to these housing authority executives. The checks misrepresented where the funds were going, and that matters because if these checks had been made out to the executives directly, that would have raised flags. There's a reason they included the contractors in this, so that they could deceive the bank and deceive others into letting these payments go through. At minimum, this court's review is for a manifest miscarriage of justice. The court will affirm as long as there's any evidence by which the jury could have found that these were fraudulent representations and pretenses. There's ample evidence that the government presented through these checks, through the checks themselves, through the payees, that these were up. The Plain Air Doctrine has more than one prong to it, right? When you say we're reviewing the print, we have to apply the Plain Air Doctrine, don't we? Yes, Your Honor. Which has four parts to the test? Yes. Okay, and what's your reaction to the question Judge Easterbrook asked of your adversary? Your Honor, I can see the court going down that line. In this case, the government has taken the position, applying this court's precedent, that the court will review. And if there is a manifest miscarriage of justice here, if it rises to that level, if the evidence was so lacking that the district court was— I don't see Olano cited in your brief, nor is Page or recent en banc about Plain Air. You didn't seem to be making any argument along the lines that I raised with Mr. Capobianco. What are we to make of that? Correct, Your Honor. Again, in this case, the government has taken the position set out in the briefs. I'm not aware of— Basically, you're willing to give them back the $600. We've taken the position on the standard review set out in the briefs that if the evidence is that lacking, then the court should reverse. Again, I can certainly understand if the court wishes to go down the line of the other Olano prongs, also set out in Page. In any event, there is plenty of evidence here that these checks— Look, the burden of my question was whether a particular line of argument had been preserved, and I suggested that it had not. But the line of argument that I suggested was not preserved was not preserved by the United States in its brief. And normally, non-preservation of a possible response based on non-preservation waives the waiver, as they say, or rather forfeits the forfeiture. Correct, Your Honor. And I believe—I don't have a case to cite, but I believe the court isn't necessarily bound by the government's position, but the government's position is not to rely on— Do you agree that we're reviewing for plain error? For the bank fraud? Yeah. Yes. Okay, but without reference to Olano, Page, or Rule 52B. Yep. I believe that's correct, Your Honor. And, again, we were citing two cases that seemed to address this specific situation. But if the court wishes to go back to Olano and to the more recent Page-Enbach decision, that misalignment, certainly, the court could go down. If there are no questions as to why or fraud or the sentencing argument, the government asks the court to affirm. Thank you. Thank you, Mr. Temkin. Anything further, Mr. Capobianco? Yes, Your Honor. Just one brief point. The government seemed to shift its theory again. It said it mattered that Tanya Robinson and Mr. Smith were the ones cutting the checks. That was the case in Rodriguez, which is the Second Circuit case we cite, which was the exact same thing except the defendant was the contractor rather than the person who was at the organization. And the Supreme Court actually, in Lawrence, cites that case. This is at 361-05. And they cite that case as an example of something that doesn't qualify as bank fraud. So the government's new theory that they've raised for the first time doesn't even work. So we would ask that the court reverse Mr. Smith's bank fraud convictions and vacate his sentence. Hold on. Just Smith? And Ms. Robinson as well. Yeah. Okay. That argument's made on behalf of both defendants. Yes, Your Honor. Right. Okay. Thank you very much. Ms. Masters, Mr. Capobianco, the court appreciates your willingness to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.